UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE TURRENTINE, #525505,

                Petitioner,

                                      CASE NO: 2:10-CV-12789

v.                                HONORABLE NANCY G. EDMUNDS

GREG MCQUIGGIN,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

Michigan prisoner Ronnie Turrentine ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of possession with intent to deliver 1,000 grams or more of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(i), and conspiracy to possess with intent to deliver the same, MICH. COMP. LAWS § 750.157a, following a jury trial with co-defendants Kareem Dale Rhodes and Brian Lott in the Macomb County Circuit Court.  He was sentenced to concurrent terms of 14 years 11 months to 30 years imprisonment on those convictions in 2005.

In his pleadings, Petitioner raises several Fourth Amendment claims, as well as claims concerning the jury selection, the right to confrontation, the non-disclosure of evidence, the effectiveness of trial and appellate counsel, and the state courts' standard of review.  For the reasons stated herein, the Court denies the petition for a writ of

habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his participation in the transportation of a significant amount of cocaine.  The Court adopts the facts set forth by the Michigan Court of Appeals on direct appeal, which are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).  Those facts are as follows:

> Defendants' convictions arise from their participation in the possession and distribution of 11 kilograms (28 pounds) of cocaine. The cocaine was found in the gas tank of a rented Chevrolet Blazer that was being driven by defendant Turrentine. Defendant Rhodes and another codefendant, Brian Lott, were implicated as individuals who helped place the cocaine into the gas tank. The three allegedly acted together as one of the "transport" links of a larger conspiracy chain to sell the cocaine.

> On February 11, 2004, Macomb County Sheriff Deputy Kenneth Rumps, a member of the County of Macomb Enforcement Team (COMET), a drug task force, went to the Extended Stay Motel in Roseville to conduct surveillance on the Chevrolet Blazer in response to information that the vehicle was involved in trafficking narcotics. He eventually saw defendant Turrentine get into the Blazer and leave. Deputy Rumps, who was in an unmarked vehicle, followed the vehicle and alerted other members of his team that the vehicle was moving. During his pursuit, Deputy Rumps saw defendant Turrentine commit several traffic violations, so he radioed Deputy Matthew Pecha, who was in a marked police vehicle, to assist him in making a traffic stop. Deputy Pecha initiated the stop as defendant Turrentine drove into a parking lot. Another officer, Deputy Christopher Topacio, arrived with a narcotics detection dog as Deputy Pecha spoke with Turrentine. The dog alerted to the back area of defendant Turrentine's vehicle. Deputy Pecha, who also had a narcotics canine with him, had his dog check the vehicle. It too alerted to the back of the vehicle. A subsequent removal of the tank revealed the presence of 11 tube socks tied with zip ties. Each sock contained cocaine that had been placed into heat-sealed plastic bags. A total of 11 kilograms of cocaine were found in the gas tank. Upon defendant Turrentine's arrest, police confiscated a key

2

to a room at the Extended Stay Motel.

Deputy Rumps subsequently contacted Sergeant Brian Kozlowski and asked him to secure Turrentine's motel room. Police were informed by the motel clerk that defendant Turrentine was in the motel with two other men. Defendant Rhodes and defendant Lott subsequently arrived at the motel room and were stopped by police while trying to enter the room with a room key. Deputies Rumps and Topacio briefly interviewed defendant Rhodes and defendant Lott. Defendant Lott stated that he and defendant Rhodes had been driving around together all day in defendant Lott's vehicle, which was parked at the motel. Defendant Lott gave the police his key to his car and provided permission to search the car. The officers opened the trunk and found a toolbox with all the tools necessary to remove, disassemble and reassemble a gas tank. In addition, police found a pail smelling of gasoline, zip ties, latex gloves, two heat-sealers, and rolls of Food Saver heat-sealable plastic bags.

During later questioning at the Macomb County Jail, defendant Lott stated that he was from California and had flown to Michigan to meet a girl. He rented a car and then went to Roseville to meet defendant Turrentine, who coincidentally was in the area. Defendant Lott explained that he planned to stay with defendant Turrentine to save money. Defendant Lott maintained that he "bumped into" defendant Rhodes at a mall and the two met some girls.

Police also questioned defendant Rhodes at the Macomb County Jail. After the police informed him that they might be able to help him if he provided information, defendant Rhodes admitted that he knew the general location where the cocaine was to be dropped off in Detroit. He explained that they were to pick up the money at that location after delivering the cocaine. Defendant Rhodes stated that the cocaine was supposed to be delivered later that day, but the police had intercepted them before the delivery. Defendant Rhodes stated that his "take" from his participation would have been approximately $170,000. Defendant Rhodes stated that he could not provide further information because, now that one part of the deal had failed, the other participants would know something was wrong.

*People v. Turrentine*, No. 261277, 2007 WL 1135663, *1-2 (Mich. Ct. App. April 17, 2007) (unpublished) (footnote omitted).

Following his convictions and sentencing, Petitioner filed an appeal of right with

the Michigan Court of Appeals raising the following claims:

I.      Where the police conducted a dog-sniff during an illegal traffic stop, the search of the vehicle violated the Fourth Amendment, and the evidence resulting therefrom must be suppressed.

II.     A new trial is required where the prosecution violated the equal protection clauses of the state and federal constitutions by improperly exercising a peremptory challenge to strike an African American juror.

III.    The cumulative effect of the prosecutor's misconduct denied defendant a fair trial.

IV.     Ineffective assistance of counsel denied defendant a fair trial.

V.      The cumulative effect of error requires that defendant be granted a new trial.

The Michigan Court of Appeals denied relief and affirmed his convictions. *Id.* Petitioner

filed an application for leave to appeal with the Michigan Supreme Court, raising the

same claims as well as the following two claims:

I.      His unlawful detention, without any prior arrest or warrants for him, constitutes a seizure under the meaning of the 4th Amendment of the United States Constitution.

II.     He challenges all the illegal searches of his vehicle. His 4th and 14th Amendment constitutional rights were violated.

The Michigan Supreme Court denied leave to appeal in a standard order. *People v.*

*Turrentine*, 480 Mich. 911, 739 N.W.2d 621 (2007).

Petitioner subsequently filed a motion for relief from judgment with the state trial

court raising the following claims:

I.      He was denied effective assistance of counsel and a fair trial guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1 Section 20 of the Michigan

4

Constitution when defense and appellate counsels failed to perform as lawyers with ordinary training and skills.

II.     He has shown both "good cause" for failure to raise the within issues in his appeal of right and the "prejudice" created by the failure to raise these issues effectively, adequately, and meaningfully.

III.    The confrontation clause, providing the accused has right to confront and cross-examine witnesses against him, applies not only to in-court testimony, but also to out-of-court statements introduced at trial, regardless of the admissibility of these statements under the law of evidence. The confidential informant was reportedly known.

IV.     Out-of-court statements by witnesses that are testimonial are barred under the confrontation clause, unless witnesses are unavailable and defendant had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by the courts, abrogating *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 57.

V.      Oakland and Macomb interdiction team engaged in a well-orchestrated and elaborate pretext or subterfuge to effectuate a pretext stop and arrest to investigate, hoping to find illegal drugs.

The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(2) and (3), finding that several claims had been previously raised and denied on direct appeal and that Petitioner had failed to establish good cause or actual prejudice for failing to present the remaining claims on direct appeal. *People v. Turrentine*, No. 2004-2867-FC (Macomb Co. Cir. Ct Dec. 29, 2008) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Turrentine*, No. 293786 (Mich. Ct. App. Nov. 2, 2009) (unpublished) (reconsideration denied Dec. 23, 2009). Petitioner filed an application for leave to appeal with the Michigan Supreme Court which was similarly denied. *People v. Turrentine*, 486 Mich.

5

1043, 783 N.W.2d 341 (2010).

Petitioner thereafter filed his federal habeas petition, raising the following claims as grounds for relief:

I.      Conviction obtained by use of evidence pursuant to an unconstitutional search and seizure.

II.     Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

III.    Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and empaneled.

IV.     Denial of effective assistance of trial and appellate counsel for failing to argue the issues that defendant set forth in his pro per pleadings.

V.      Conviction obtained by a violation of Sixth Amendment right to confrontation.

VI.     Fourth Amendment violation – impoundment and inventory search without a warrant.

VII.    Fourth Amendment violation of chain of custody.

VIII.   Courts erred in not applying the proper standard of review.

IX.     Police engaged in an elaborate pretext or subterfuge to effectuate a pretext stop, hoping to find illegal drugs.

X.      Conviction by the unconstitutional failure of the prosecution to disclose to the defense evidence favorable to the defendant.

Respondent has filed an answer to the petition contending that it should be denied because the claims are not cognizable, lack merit, and/or are barred by procedural default.

## III.     Standard of Review

Federal law imposes the following standard of review for habeas cases:

6

An application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"A State court's decision is 'contrary to' ...clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [The Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza,* 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)); see also *Bell v. Cone,* 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of §2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case.'" *Wiggins v. Smith* 539 U.S. 510, 520 (2003) (quoting *Williams,* 529 U.S. at 413); see also *Bell,* 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins,* 539 U.S. at 520-21 (citations omitted); see also *Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential

standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett* _U.S._, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh,* 521 U.S. at 333, n. 7; *Woodford v. Viscotti,* 537 U.S. 19,24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* _U.S._, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Under §2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See *Williams,* 529 U.S. at 412; see also *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an

8

unreasonable application of clearly established Federal law' for a state court to decline

to apply a specific legal rule that has not been squarely established by this Court")

(quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v.*

*Andrade,* 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to

give reasons before its decision can be deemed to have been 'adjudicated on the

merits.'" *Harrington,* 131 S. Ct. At 785. Furthermore, it "does not require citation of

[Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court]

cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them." *Early v. Packer* 537 U.S. 3, 8 (2002); see also *Mitchell,* 540 U.S. at

16. While the requirements of "clearly established law" are to be determined solely by

Supreme Court precedent, the decisions of lower federal courts may be useful in

assessing the reasonableness of the state court's resolution of an issue. *See Stewart v.*

*Erwin,* 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox,* 340 F.3d 667,

671 (8th Cir. 2003)); *Dickens v. Jones,* 203 F. Supp. 354, 359 (E.D. Mich. 2002).

 Lastly, a state court's factual determinations are entitled to a presumption of

correctness on federal habeas review. *See* 28 U.S.C. §2254(e)(1). A petitioner may

rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d

358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was

before the state court." *Cullen v. Pinholster*, _U.S._, 131 S. Ct. 1388, 1398 (2011).

IV.   **Analysis**

A.   **Fourth Amendment Claims**

Petitioner first asserts that he is entitled to habeas relief due to several perceived violations of his Fourth Amendment rights (Habeas Claims I, II, VI, VII, IX).  Respondent contends that these claims are not cognizable upon habeas review.

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes.  *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism."  *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim."  *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005).  This procedural mechanism is a motion to suppress, ordinarily filed before trial.  *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first

10

time on appeal).  Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner has not done so.  The record reveals that Petitioner filed a motion to suppress the cocaine seized from his rental car and challenged the traffic stop before trial.  The state trial court denied the motion.  Petitioner then raised the issue before the Michigan Court of Appeals, which denied relief on the merits, and before the Michigan Supreme Court, which denied leave to appeal.  Petitioner also raised the same and/or similar claims on collateral review in the state courts and was denied relief.  Consequently, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claims and that he received all the process he was due.  Accordingly, his Fourth Amendment claims are not cognizable on habeas review pursuant to *Stone v. Powell*.  Habeas relief is not warranted on such a basis.

### B.    Jury Selection Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor impermissibly excused an African-American woman from the jury based upon her race and the trial court erred in ruling that the prosecutor's peremptory challenge was valid.  Respondent contends that this claim lacks merit.

Although a criminal defendant has no right to have a member of a particular race on his jury, he does have the right to be tried by a jury whose members are selected by non-discriminatory criteria.  *See Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975).  The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of

11

their race.  *See Batson v. Kentucky,* 476 U.S. 79, 89 (1986); *Lancaster v. Adams*, 324

F.3d 423, 432-33 (6th Cir. 2003).

To establish a prima facie case of purposeful discrimination in the selection of a

*petit* jury based upon the prosecutor's exercise of peremptory challenges, a defendant

must show that he is a member of a cognizable racial group and that the prosecutor

used peremptory challenges to remove members of the defendant's race from the jury.

The defendant must also show that other relevant circumstances raise an inference that

the prosecutor used the peremptory challenges to exclude jurors on account of their

race.  Relevant circumstances include the pattern of strikes and the prosecutor's

questions and statements.  *Batson*, 476 U.S. at 96-97.

Once the defendant makes a *prima facie* showing, the burden shifts to the

prosecutor to offer a "race neutral explanation" for challenging the jurors.  *Id.* at 97.  A

"race neutral" explanation is one based upon something other than the juror's race.  The

issue is the facial validity of the prosecutor's explanation.  "Unless a discriminatory

intent is inherent in the prosecutor's explanation, the reason offered will be deemed

race neutral."  *Hernandez v. New York,* 500 U.S. 352, 360 (1991).  The ultimate

question of discriminatory intent concerns an evaluation of the prosecutor's credibility.

Such a decision represents a factual finding accorded great deference on appeal, which

will not be overturned unless clearly erroneous.  *See Miller-El v. Cockrell*, 537 U.S. 322,

339-40 (2003).  The defendant bears the final burden of proving purposeful

discrimination.  *Batson*, 476 U.S. at 98.

Citing *Batson*, the Michigan Court of Appeals denied relief on this claim, stating:

Defendant Turrentine next argues that the trial court erred in finding that

12

the prosecutor did not impermissibly use a peremptory challenge to excuse an African-American juror. We disagree.

The use of a peremptory challenge to strike a potential juror solely because of that juror's race violates the Equal Protection Clause of the Fourteenth Amendment. US Const, Am XIV; *Batson v. Kentucky*, 476 US 79, 84; 106 S Ct 1712; 90 L Ed 2d 69 (1986); *People v. Knight*, 473 Mich 324, 335; 701 NW2d 715 (2005). Under *Batson*, the opponent of the peremptory challenge must first make a prima facie showing of discrimination." *Id.* at 336. If the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike. *Id.* at 337. If the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext for discrimination. *Id.* at 337-338. This Court reviews de novo whether the proponent of a peremptory challenge articulated a race-neutral explanation for the strike. *Id.* at 343-344. The clear error standard governs appellate review of a trial court's determination whether the race-neutral explanation for the use of a peremptory challenge is a pretext for discrimination. *Id.* at 344.

In this case, the prosecutor explained that he excused an African-American juror because the juror revealed that she had previously served as a juror in a criminal case in which the jury acquitted the defendant of criminal sexual conduct. This was a facially nondiscriminatory reason for excusing the juror and the trial court did clearly err in finding that this reason was not a pretext for discrimination.

*Turrentine*, 2007 WL 1135663 at *8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not reveal evidence of purposeful discrimination by the prosecutor in exercising the contested peremptory challenge. The mere fact that the prosecutor used a peremptory challenge to excuse one African-American woman from the jury, standing alone, is insufficient to establish a prima facie case of discrimination. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988); *see also Williams v. Woodford*, 306 F.3d 665, 681 (9th Cir. 2002); *Anderson v. Cowan*, 227 F.3d 893, 901-02 (7th Cir. 2000) (fact that

13

prosecution used peremptory challenges to exclude two African-American women from jury, without more, was insufficient to raise inference of discrimination).  A court considering a *Batson* challenge must look to all the relevant circumstances, including the number of strikes against jurors of a particular racial group and the prosecution's questions and comments during voir dire.  *See Batson*, 476 U.S. at 97.  A court may also consider factors such as the racial composition of the jury venire and the final jury panel, the number of peremptory challenges and their manner of execution, and the race of all jurors who are excused from service (whether for cause or peremptorily).  *Sangineto-Miranda*, 859 F.2d. at 1520.

In this case, Petitioner points to no facts, other than the striking of one African-American woman, to support his *Batson* claim.  The Court's review of the record demonstrates that the relevant circumstances negate an inference of discrimination.  The prosecutor did not question any of the jurors in an unusual, distinct, or discriminatory manner, nor did the prosecutor make any comments reflecting bias or discriminatory intent.  The prosecutor used a peremptory challenge to excuse another juror, Mr. Wilde (who was presumably not African-American as he was not included in this claim), as well as the juror at issue.  Furthermore, the record indicates that the prosecution had a sufficient, non-discriminatory reason to excuse the juror – her prior criminal jury service in the same county that resulted in an acquittal.  Given such circumstances, Petitioner has not shown that the prosecution unconstitutionally exercised a peremptory challenge to excuse the juror based upon her race.  Habeas relief is not warranted on this claim.

C.     **Confrontation Claim**

14

Petitioner also asserts that he is entitled to habeas relief because he was denied his confrontation rights where the police relied upon a confidential informant's claim that he (Petitioner) might be involved in drug trafficking and upon an anonymous tipster's claim that a suspicious car was parked at the motel.  Respondent contends that this claim is barred by procedural default because Petitioner first raised the issue in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented this claim to the state courts in his motion for relief from judgment.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds

15

previously and actual prejudice resulting therefrom.  *See* MICH. CT. R. 6.508(D)(3).  The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds by ruling that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claim on direct appeal.  The state courts thus clearly relied upon a procedural default to deny Petitioner relief on this claim.  Accordingly, this claim is procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default.  In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823,

16

828 (6th Cir. 1994).  In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690.  Judicial scrutiny of counsel's performance is thus "highly deferential." *Id.* at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

17

Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Counsel raised substantial claims on direct appeal including a Fourth Amendment claim, a jury selection claim, prosecutorial misconduct claims, ineffective assistance of counsel claims, and a cumulative error claim. None of Petitioner's current claims are "dead-bang winners," particularly given the significant evidence of guilt presented at trial. Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct (or demonstrate prejudice to excuse the procedural default) because this claim lacks merit for the reasons stated by the trial court in denying relief from judgment. Namely that the confidential informant's and anonymous tipster's statements were not admitted into evidence and such information was used, not for the truth of the matter asserted, but to explain the police surveillance and investigation of the defendants.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S.

18

298, 324 (1995).  Moreover, actual innocence means factual innocence, not mere legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Petitioner has made no such showing.  His conclusory allegations of innocence are insufficient.  This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

### D.    Non-Disclosure of Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor failed to disclose the identity of the confidential informant.  Respondent contends that this claim is unexhausted because Petitioner never raised it in the state courts on direct appeal or collateral review.  Respondent further argues that this claim is now barred by procedural default because Petitioner no longer has a state court remedy available to exhaust it.

A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Each issue must be properly raised before both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The claims must also be "fairly presented" to the state courts, meaning that the petitioner must have asserted both the factual and legal bases for the claims in the state courts.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans*).  The burden is on the

19

petitioner to prove exhaustion.  *Rust*, 17 F.3d at 160.

The record shows that Petitioner did not exhaust this specific issue on direct appeal or in his post-conviction proceedings.  He no longer has an available state court remedy by which to do so.  Pursuant to Michigan Court Rule 6.502(G)(1), a criminal defendant in Michigan is generally permitted to only file one post-conviction motion for relief from judgment.  *See Gadomski v. Renico*, 258 F. App'x 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999).  Consequently, this claim is now defaulted.  When a habeas petitioner fails to properly present a claim to the state courts and is barred from pursuing further relief under state law, he has procedurally defaulted the claim for purposes of federal habeas review.  *See Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)).

As noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85.

In this case, Petitioner has failed to establish cause to excuse this procedural default.  The fact that appellate counsel did not raise the claim on direct appeal is immaterial because Petitioner could have still properly exhausted the claim in his state post-conviction motion for relief from judgment and related appeals.  *See Moon, supra* (citing *Carpenter v. Vaughn*, 888 F. Supp. 635, 654 (M.D. Pa. 1994)).  A prisoner's pro se status or lack of knowledge about state court rules does not constitute cause to

20

excuse a procedural default. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995);

*Robertson v. Abramajtys*, 144 F. Supp. 2d 829, 838 (E.D. Mich. 2001). The Court need

not address the issue of prejudice when a petitioner fails to establish cause to excuse a

procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722

F.2d 286, 289 (6th Cir. 1983). Additionally, as discussed *supra*, Petitioner has not

demonstrated that a fundamental miscarriage of justice has occurred. This claim is thus

barred by procedural default and does not warrant federal habeas relief.

### E.   Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel

was ineffective in various respects. While not clear from his pleadings, the Court

assumes that he is raising the same ineffective assistance of trial counsel claims raised

on direct appeal and collateral review in the state courts. Respondent contends that

these claims lack merit and/or are barred by procedural default.

### 1.   Claims Raised on Direct Appeal

On direct appeal, Petitioner claimed that trial counsel was ineffective for failing to

request a separate trial and for failing to object to police testimony describing the

officers' involvement with drug interdiction teams and the reasons for their surveillance.

Respondent contends that these claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme

Court set forth a two-prong test for determining whether a habeas petitioner has

received the ineffective assistance of counsel. First, a petitioner must prove that

counsel's performance was deficient. This requires a showing that counsel made errors

21

so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is

22

'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When §

2254(d) applies, the question is not whether counsel's actions were reasonable.  The

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

deferential standard.  *Id.* at 788.

> The Michigan Court of Appeals denied relief on these claims, stating:

> Defendant Turrentine first argues that counsel was ineffective for not
> requesting a separate trial. He argues that a separate trial was required to
> prevent the nontestifying defendants' statements from being improperly
> introduced against him in violation of his right of confrontation. As
> previously indicated, however, the trial court provided a specific limiting
> instruction advising the jurors that each defendant's statement could only
> be considered against that defendant and not against the other
> defendants. "It is well established that jurors are presumed to follow their
> instructions." *Graves, supra* at 486. Moreover, the statements were
> redacted at trial to minimize any prejudice to the other defendants. Under
> the circumstances, it is not apparent that counsel's decision not to seek
> severance was either unreasonable or prejudicial.

> Defendant Turrentine also argues that counsel should have objected to
> the evidence describing the officers' involvement with drug interdiction
> teams and their reasons for beginning their surveillance. As previously
> indicated in part III(C), however, this evidence was relevant and, therefore,
> was admissible. Therefore, counsel was not ineffective for failing to object
> to the evidence. Further, counsel specifically agreed concerning the extent
> to which the officers could reveal their reasons for the surveillance.
> Defendant Turrentine has not overcome the presumption that counsel
> agreed to allow this evidence as a matter of sound trial strategy, to limit
> the information the jury would hear concerning the circumstances
> surrounding the impetus for the police investigation. *People v. Rockey*,
> 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Defendant Turrentine has
> not shown that trial counsel was ineffective.

*Turrentine*, 2007 WL 1135663 at *9-10.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  As to the severance issue, trial

counsel may have reasonably decided not to seek a separate trial given the trial court's

precautionary actions and jury instructions.  Moreover, Petitioner has failed to establish

that he was prejudiced by counsel's conduct.  The prosecution presented significant

evidence of his guilt irrespective of his co-defendants.  As to the police testimony,

Petitioner cannot establish that trial counsel erred or that he was prejudiced by

counsel's conduct because the evidence was relevant and admissible under state law.

Thus, any objection by counsel would have been futile.  Counsel cannot be deemed

ineffective for failing to make a futile motion or objection.  *United States v. Steverson*,

230 F.3d 221, 225 (6th Cir. 2000).  Petitioner has failed to demonstrate that counsel

was ineffective.  Habeas relief is not warranted on these claims.

### 2.    Claims Raised on Collateral Review

In his motion for relief from judgment, Petitioner claimed that trial counsel was

ineffective for failing to raise additional challenges to the stop and search of his vehicle

and for failing to challenge the police use and non-disclosure of a confidential informant

and anonymous tipster.  Respondent contends that these claims are barred by

procedural default and lack merit.

As with Petitioner's confrontation claim, these claims are barred by procedural

default because Petitioner first raised them in his motion for relief from judgment and

the state courts denied relief pursuant to Michigan Court Rule 6.508(D)(3).  Petitioner

has also failed to establish cause or prejudice to excuse this default, or that a

fundamental miscarriage of justice has occurred with respect to this claim.  *See*

discussion *supra*.

Moreover, Petitioner cannot prevail on the merits of these claims.  As to the stop

and search of Petitioner's vehicle, the record reveals that trial counsel did raise a Fourth

24

Amendment claim before the trial court, but the court denied the motion to suppress the evidence.  The Michigan Court of Appeals subsequently upheld that ruling and determined that the traffic stop and search of the vehicle were proper.  Given such circumstances, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct.  As to the information from the confidential informant and anonymous tipster, the record reveals that their statements were not admitted into evidence at trial.  Such information was merely referenced by the police to establish the basis for their surveillance and investigation of Petitioner and his co-defendants.  As explained by the state trial court in denying relief from judgment, the use of such information did not violate the Confrontation Clause and trial counsel was not ineffective for failing to object to the police testimony.  Petitioner failed to establish that trial counsel was ineffective under the *Strickland* standard.  These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

## F.    Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the defaulted issues on direct appeal in the state courts.  Petitioner is not entitled to relief on any such claim.  As explained *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit.  Appellate counsel cannot be deemed ineffective for failing to raise non-meritorious issues.  *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).  Habeas relief is not warranted on this claim.

## G.    State Court Review Claim

25

Petitioner also asserts that he is entitled to habeas relief because the state courts failed to apply the proper standard of review to his claims. Federal habeas relief is only available to persons being held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner cannot prevail on any claim that the state courts erred in applying state law. Federal habeas relief does not lie for perceived state law errors. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Any alleged error in the application of federal law has been addressed by the Court.

Additionally, it is well-settled that states have no obligation to provide post-conviction review under the federal constitution. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Consequently, challenges to a state's post-conviction procedures are not cognizable as independent claims in federal habeas proceedings because such claims "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 247, 248 (6th Cir. 1986). Simply put, alleged errors in state post-conviction proceedings "are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *see also Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (federal habeas petition cannot be used to contest state's scheme of post-conviction relief). Habeas relief is not warranted on this claim.

### H.    Evidentiary Hearing Request

26

Lastly, Petitioner requests an evidentiary hearing asserting that the state courts erred in denying his requests for an evidentiary hearing and/or that he is entitled to an evidentiary hearing on habeas review.  To the extent that Petitioner claims that the state courts violated state law in denying an evidentiary hearing, he is not entitled to relief. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citing *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir. 2004)).  A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.  As noted, this Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law.  *Estelle*, 502 U.S. at 67-68. There is also no clearly-established Supreme Court law which recognizes a constitutional right to an evidentiary hearing on state post-conviction review.  *Hayes*, 193 F. App'x at 584; *see also Hall v. Berghuis*, No. 07-CV-12163, 2009 WL 2244793, *9 (E.D. Mich. July 27, 2009) (citing *Hayes* and denying habeas relief on similar claim); *Poindexter v. Jones*, No. 05-CV-833, 2008 WL 5422855, *4 (W.D. Mich. Dec. 30, 2008). Neither an evidentiary hearing nor habeas relief are warranted.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. §2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional

27

right." 28 U.S.C. §2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484-85.

Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings.  The Court therefore **DENIES** a certificate of appealability.

Lastly, the Court concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).  The Court therefore **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

28

s/Nancy G. Edmunds 
Nancy G. Edmunds
United States District Judge

Dated:  February 5, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of
record on February 5, 2013, by electronic and/or ordinary mail.

s/Carol A. Hemeyer 
Case Manager